IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division
In Admiralty

**JASON L. MEDLIN,**

    Plaintiff,

v.                                                  Civil Action No. _____

**UNITED STATES of AMERICA,**

    Defendant.

## COMPLAINT

Plaintiff, JASON L. MEDLIN, by counsel, hereby moves this Court for judgment and execution against Defendant, the United States of America. In support of his Complaint against Defendant, Plaintiff states as follows:

1. This is a suit for grievous and permanent injuries sustained by Mr. Medlin on March 6, 2023, while working aboard the United States Dredge McFarland (hereinafter "McFarland"). At all relevant times, the McFarland was undergoing repairs upon the navigable waters of the United States in Norfolk, Virginia.

## PARTIES

2. Jason Medlin was injured on March 6, 2023, while working onboard the McFarland. At all relevant times, Mr. Medlin was a harbor worker within the meaning of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq.

3. Defendant United States is the owner of the McFarland. At all relevant times, the McFarland was operated by and under the control of the United States Department of the Army Corps of Engineers ("ACOE").

## JURISDICTION AND VENUE

4. This Court has jurisdiction under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), the Public Vessels Act, 46 U.S.C. § 31101, *et seq*., the Suits in Admiralty Act, 46 U.S.C. § 30901, *et seq*., and under this Court's general admiralty jurisdiction, 28 U.S.C. § 1333.

5. Venue is proper in this district and in this division under 46 U.S.C. § 30906, 46 U.S.C. § 31104 and Local Rule 3(C) because Mr. Medlin sustained injury aboard the McFarland in Norfolk, Virginia.

6. This is an admiralty or maritime claim under Fed. R. Civ. P. 9(h).

7. As owner of the McFarland, the United States is subject to suit under 33 U.S.C. § 905(b).

## ADMINISTRATIVE PREREQUISITES

8. The Plaintiff presented his claim in writing to the ACOE on September 6, 2023. The ACOE acknowledged receipt of the claim by letter dated September 21, 2023.

9. Benefits under the Longshore and Harbor Workers' Compensation Act have been voluntarily paid by Mr. Medlin's employer to him commencing March 7, 2023. Mr. Medlin has the right to sue the United States because there has been no acceptance of compensation under an award in a compensation order pursuant to 33 U.S.C. § 933(b).

10. All conditions precedent to this suit have been met.

## FACTS

11. At all relevant times, Mr. Medlin was an employee of Colonna's Shipyard, Inc. hereinafter "Colonna's").

12. On March 6, 2023, Mr. Medlin was assigned by his employer to work on the

McFarland while the vessel was undergoing repairs at Colonna's.

13. At all relevant times, the United States and the crew of the McFarland failed to comply with the ACOE's own safety requirements published in its official Engineering Manual, EM 385-1-1 (30 November 2014), including the presence of impalement hazard, unsafe access between decks, not providing fall protection, inadequate lighting, and lack of adequate warnings.

14. The United States hired Colonna's to perform various repairs to the McFarland.

15. During the repair work, the ACOE requested Colonna's to evaluate, estimate, and provide a bid for additional repairs in the starboard aft winch room of the vessel, which repairs were not within the original scope of the work. As assistant superintendent, Mr. Medlin was tasked with going into both the starboard aft winch room and the starboard aft void space underneath it to examine the area of the requested repairs, determine what work needed to be done by Colonna's, and to provide an estimate of the cost to the ACOE. At all relevant times, the starboard aft void space was under the control of the United States.

16. The starboard aft void space in which Mr. Medlin was injured is located underneath the starboard aft winch room. The starboard aft void space is two levels below the main deck of the McFarland.

17. To enter the starboard aft void space, Mr. Medlin had to first go down the stairs into the starboard aft winch room. In the winch room, Mr. Medlin and his supervisor Steve Gradine inspected the deck plate beneath the winches which the ACOE wanted repaired. Mr. Gradine and Mr. Medlin then proceeded to descend another set of stairs from the winch room into the aft void space through a horizontal deck opening.

18. The stairs provided the only access into the starboard aft void space and were dangerously steep. The vertical distance from the deck opening in the starboard aft winch room

3

to the steel grating at the bottom of the stairs into the void space was approximately 20 feet. The stairs lacked adequate lighting. There were no visible warnings of hazards or obstacles to entering the void space. There were no visible instructions regarding the use of the stairs.

19. Unknown to Mr. Medlin, there were numerous latent safety hazards to persons entering the starboard aft void space via the stairs, all caused by negligent acts or omissions of the United States or those for whom it is responsible, including:

    a. The crew of the McFarland, or persons acting at the direction of the United States, installed a vertical steel pipe at the bottom of the stairs, creating a risk of impalement that could cause death or serious injury to a person falling from the stairs. The steel pipe was approximately 4 ½ feet high and 1 ½ inches in diameter. It was bolted to the steel grating at the bottom of the stairs, effectively turning it into a spear. The steel pipe had no cap or other protective covering and was open at the top. Under EM 385-1-1, the government was required to remove this impalement hazard, implement fall protection, or provide adequate warnings.

    b. The steps of the stairs were caked with mud, making them slippery and unsafe to use. Under EM 385-1-1, the government was required to keep the stairs free of mud.

    c. The front edges of several steps of the stairs were broken, making them uneven and unsafe to use. Under EM 385-1-1, the government was required to prevent persons from using the stairs until it was repaired.

    d. There were several obstructions in the way of a person descending the stairs, making it unsafe to use. Under EM 385-1-1, the government was required to keep the stairs free of obstructions. Obstructions included the vertical steel pipe at the bottom

of the stairs, a pipe that crossed over the stairs impeding access for taller individuals, and the irregular shape of the deck opening through which the stairs were accessed. All were obstacles that created risk of injury to a person descending the stairs.

   e. The steepness of the stairs made the act of entering the starboard aft void space physically difficult and hazardous. The 68-degree slope of the stairs was far steeper than the maximum 30-to-50-degree range specified for safety under EM 385-1-1, and the 50-to-60-degree range specified for safety by the American Bureau of Shipping ("ABS") in its Guide for Crew Habitability on Workboats (2014), which is applicable to dredges. Additionally, the location of the vertical steel pipe at the bottom of the stairs contravenes the ABS requirement for a minimum of 30 inches of clearance.

   f. The stairs into the starboard aft winch room lacked adequate lighting, making them unsafe, and masking the other safety failures. Under EM 385-1-1, the government was required to provide adequate lighting for the stairs.

   g. There were no adequate warnings or notices given by the United States to Mr. Medlin of any of the foregoing latent hazards.

   h. Such other negligent acts or omissions of the United States or those for whom it is responsible as may be identified in discovery and proved at trial.

17. Mr. Medlin fell while descending the stairs and was impaled upon the vertical steel pipe, causing him grievous and permanent injury.

18. The United States had primary control over the starboard aft void space of the McFarland and owed a duty to Mr. Medlin to eliminate the hazards and/or adequately warn him of them, which it negligently failed to do.

19. Alternatively, the United States owed a turnover duty to Mr. Medlin to eliminate

the latent hazards in the starboard aft void space and/or adequately warn him of them, which it negligently failed to do.

20. Alternatively, the United States had a duty to intervene to protect Mr. Medlin from the latent hazards in the starboard aft void space, which it negligently failed to do.

21. While Mr. Medlin was performing his duties as an employee of Colonna's, he was grievously and permanently injured due to the negligence of the United States or those for whom it is responsible.

## COUNT I

### Section 905(b) Negligence – Active Control

22. Paragraphs 1-21 are incorporated herein by reference.

23. As owner of the McFarland, the United States owed a duty to use reasonable care to prevent injuries to Mr. Medlin in areas that were under the control of the ship.

24. At all relevant times, the United States maintained active control over the starboard aft void space in which Mr. Medlin sustained injuries.

25. The United States breached its duties to Mr. Medlin by creating or allowing to exist numerous hazards in the starboard aft winch room that were unknown to Mr. Medlin and/or by failing to provide him adequate warning of those hazards.

26. As a result of the negligence of the United States, Mr. Medlin was impaled upon the steel pipe at the base of the stairs, causing him grievous and permanent injury.

## COUNT II

### Section 905(b) Negligence – Turnover Duty

27. Paragraphs 1-26 are incorporated herein by reference.

28. As owner of the McFarland, the United States owed a duty to use reasonable care

to eliminate or warn longshoreman of latent hazards before turning over the ship for repairs.

29. The United States breached its duties to Mr. Medlin by creating or allowing to exist numerous latent hazards in the starboard aft void space that were not open and obvious to a reasonable ship repairer and/or by failing to provide him adequate warning of those hazards before turning over the ship for repairs.

30. At all relevant times, Mr. Medlin acted as a reasonable ship repairer and was unaware of the latent hazards that existed in the starboard aft void space of the McFarland.

31. In addition, the United States and those acting on its behalf failed to warn Mr. Medlin of the latent hazards in the McFarland's starboard aft void space.

32. As a result of the negligence of the United States, Mr. Medlin was impaled upon the steel pipe at the base of the stairs, causing him grievous and permanent injury.

## COUNT III

### Section 905(b) Negligence – Duty to Intervene

33. Paragraphs 1-32 are incorporated herein by reference.

34. As owner of the McFarland, the United States owed a duty to intervene to prevent injury to longshoremen such as Mr. Medlin when it recognized that they are operating in a hazardous way.

35. The United States knew, or reasonably should have known, that any longshoreman's use of the stairs – including Mr. Medlin – was hazardous because of the risk of being impaled upon the vertical steel pipe at the bottom of the stairs.

36. The United States knew, or reasonably should have known, that employees of Colonna's would be entering the starboard aft void space to perform work in it, including entering it for purposes of inspecting and estimating the cost of further repairs requested by the

United States.

37. The United States breached its duties to Mr. Medlin by failing to intervene to protect him.

38. As a result of the negligence of the United States, Mr. Medlin was impaled upon the steel pipe at the base of the stairs, causing him grievous and permanent injury.

WHEREFORE, Plaintiff demands judgment against the United States in the sum of **$20,000,000.00**, plus pre-judgment and post-judgment interest, and all his costs in pursuing this matter.

**JASON L. MEDLIN**

By *s/James L. Chapman, IV*
James L. Chapman, IV, VSB No. 21983
**CRENSHAW, WARE & MARTIN, P.L.C.**
150 W. Main Street, Suite 1923
Norfolk, Virginia 23510
Telephone: (757) 623-3000
Facsimile: (757) 623-5735
jchapman@cwm-law.com

Todd M. Fiorella, VSB No. 30238
**FRAIM & FIORELLA P.C.**
150 Boush Street, Suite 601
Norfolk, Virginia 23510
Telephone: (757) 227-5900
Facsimile: (757) 227-5901
tfiorella@ff-legal.com
*Attorneys for Jason L. Medlin*